Case number 20-3046 from the Eastern District of Missouri, Scott Gustafson v. Bi-State Development Agency. Very good. Mr. Mr. Finkes. Yes, your honor. Finkes. May it please the court. Jason Finkes representing Gustafson, plaintiff appellant. 30 years ago, Congress enacted the ADA through its powers to help individuals with disabilities because disabilities in no way diminish the right to fully participate in society. There were barriers in communication, in transportation, and architecture that led to isolation and segregation, outright exclusion, and essentially being treated as second-class citizens when even a little effort to offer accommodation could help independence and promote economic engagement and provide access to employment and to public accommodations. Transportation connects these individuals with the workplace and the marketplace and offers that independence and equal opportunity. Accordingly, Congress in enacting the ADA specified that there were to be strong, enforceable, clear, and consistent standards and specified that the federal government was to serve a central role in establishing those standards and enforcing those standards. This appeal stems from final judgment entered against our client, a blind individual who requires audible information and travels accompanied by his guide dog, Jersey, and requires access to electronic information provided to the general public through a screen reader. Mr. Jersey required accessible fixed-route services in a non-discriminatory manner, an operated system in a non-discriminatory manner, for nearly half the life of the ADA. As early as 2000, Bi-State commissioned an audit that identified substantial deficiencies in its performance in the system under the regulations. Subsequent perennial reviews and expert reports by plaintiff in this case indicate these problems were either addressed or resolved or recurred despite being well-known issues. Our client seeks to stay in court starting with today asking the court to make good on the promise of the federal government, including the judiciary, to provide these clear, strong, consistent, and effective standards to prevent and eliminate outright exclusion, the denial of meaningful benefit, and in particular here, based on the structure of the Act under Subpart B of Title II, discrimination in public transit. These twin aims... I don't think the judiciary makes standards. I believe that's the elected branches of government. I agree, and it's a matter of public policy that Congress has delegated the creation of these standards and required the Secretary of Transportation to create these standards through regulation. And it's these twin aims that lead directly to our two main concerns. First, the issue with the court erring in granting summary judgment to defendant on the issue of settlement on what appears to be little more than a bare instrument of an agreement between the state administrative agency over our client's express objections, and the second, confirmation of the required analysis under Subpart B, which should address these issues related... The issues identified in Sandoval, in Childress, and in Olmstead, with regards to the integration mandate and the manner in which accommodations are given. Starting first with the issue of contract formation, this was properly preserved and as a matter of law subject to the De Novo review. It provides an independent basis for reversal and remand... I don't understand the... Counsel, I don't understand the argument. Is this the argument about the private right of action or the regs? What do you... You're not relating to what I got the issues being out of the briefs. Sure, Your Honor. There are two issues here. The court resolved and bypassed all of the factual disputes by granting summary judgment on the affirmative defense of settlement. It's why there's very little in terms of the record of what Mr. Gustafson actually experienced in order to assess whether or not he was denying... It's a settlement issue then. That is the first one and an independent basis for reversal from our perspective. The issue there is that Mr. Gustafson never manifested mutual assent to settlement. On the document and the addendum itself specifies that Mr. Gustafson actively repudiates the agreement, does not wish to participate, is not a party, and based on the language of the document, it's unclear that Mr. Gustafson ever could have received any benefit to be considered a third party beneficiary. Wasn't the commission acting on his behalf? Isn't that how the state court described it? I think that it's more accurate to say that the state court was acting on behalf of the state of Missouri to enforce the Missouri Human Rights Act than it is to resolve Mr. Gustafson's individual claims, which would be his to waive or release, and he never agreed to waive or release them for Title II, Subpart B. Title II, Subpart B, in the way in which the ADA is enacted, is a subsection of Title II, specifies that, yes, you are allowed to engage in alternate dispute resolution mechanisms to the extent allowed by law, but where an individual doesn't have rights under these laws, for example, where by state a secured dismissal of Mr. Gustafson's MHRA claims based on a claim that MHRA lacked jurisdiction, this issue almost evaporates because the defendant secured dismissal of the MHRA claims by saying they lacked jurisdiction. Under Missouri law, if they had no jurisdiction, the administrative agency's acts without race judicata can't offer any assistance in analyzing these issues. These are fundamental facts questions that are still before the court and in particular for jury determination of whether or not there was settlement of Mr. Gustafson's claims, whether there was a meeting of the minds at all. The statutory framework in Missouri is a little bit unusual. It talks about any settlement and conciliation agreement negotiated with respect to or during that period shall be an agreement between the complainant and the respondent and subject to approval by the executive director, and then it provides for obviously expressed an intent not to be bound. They expressed an intent not to enter into that plea agreement, but they never, but he never filed the claim, the petition for judicial review, right? Does that matter? Well, there's a question of fact there, especially with regards to how those issues are interpreted in Missouri, including under the secondary statement of contracts with these issues of third-party beneficiary or otherwise. That's not a fact question. What you just said is a law question. I'm sorry, Your Honor. I started with the law and I'm getting to the factual question. In the statement of undisputed facts upon which defendants sought summary judgment, that issue was contested with reference to Mr. Gustafson's own testimony. Wait, wait, wait. This would be a document. There would be documentary evidence conclusive on that. Did he petition for review or not? Well, it would be a question of the state administrative records, but whether or not... Well, are they in the record? You're saying that he said I petitioned for review and didn't back it up? I don't understand. Okay. Your Honor, the issue is that Mr. Gustafson didn't receive in an accessible format indications that there was a settlement that had been reached or that there was a final decision or notification of the hearing by the Missouri Commission, and that is how we contested the issues as to whether or not summary adjudication was appropriate. If he never received notice or opportunity to object, then Mr. Gustafson objecting at the first opportunity would have been through filing this lawsuit, which is... Wait, wait, wait. I thought it was on the record that he made his... He objected, refused to accept the settlement. Yes. Did he do that within the time the petition for judicial review? Within the statutory structure... So, within the federal primacy of these issues, only the decisions of the Missouri... That's a fact question. Can I get an answer to my fact question and then the argument? Sure, Your Honor. I'm sorry. He did not, through the administrative process, receive information sufficient to allow him to contest through judicial review under the timing standard because he didn't receive an accessible copy of the document or notification. When did he make his... When did he say, I don't accept the settlement? How did he do that? Prior to the settlement being entered, from the document that's before the court and the addendum, it's very clear that there would be two documents. The first one that he reviewed and rejected and the second one which was signed by the Missouri Commission and by defendant. Mr. Gustafson... So, you're telling me he did have an opportunity to review the settlement before it was finalized? I think that there's a... He was given an opportunity or provided information that there was a draft document that he received that contained potential terms and it's unclear in the record whether or not he personally reviewed those records or had them read to him, but as they were reflected to him, in order to manifest mutual assent as to the under the Missouri Supreme Court law, you have to have a match of assent as to the terms and... Did he attempt to assert an out of time petition for review? Whenever he learned that this terrible thing had happened? In filing with the Missouri Supreme Court, in filing his petition in this matter, based upon the subsequent charge of discrimination that he later filed, Mr. Gustafson intended to contest that settlement agreement as well and under Missouri law, that is a permissible basis for contesting... That was a petition to the district court or to the reviewing state tribunal? It was to the Missouri Circuit Court, which was then removed to the federal court when ADA claims were added. Regardless, if defendant was in breach of that settlement... What year was that? How many years after the settlement was that? He initially filed his first case or his ADA claims in, I think, 2000... Well, he filed the claims under the Missouri Human Rights Act in 2016 and then filed his ADA claims, I think, in 2018. So five years after the settlement? Erroneously believing himself to be bound because that is what he thought because he had missed the settlement. Back to Judge Erickson's question. What does not invoking the petition for review under state law, what difference does it make legally? I don't believe that it creates any difference, Your Honor. If the document is not of any legal effect, if it doesn't evidence the meeting of the minds between Mr. Gustafson and his party, then... That's what he could have argued to the state court. He could have argued that to the state court. Okay, so he believed or foreclosed that remedy. What difference... I agree with Judge Erickson. I think that's not a clear question. I believe that there is a material factual dispute as to whether or not Mr. Gustafson ever manifested assent or ratified the agreement or had meaningful opportunity to manifest assent to that document, regardless of whether you address it under as a third party. That would be an issue for the state court. Well, it's before this court because defendant sought enforcement of the settlement agreement against Mr. Gustafson. Can the statutory petition for review under state law come to a federal court? The decisions and fact findings of a state administrative agency aren't given any effect in the federal courts unless they decide to... I mean, there are facts, but those factual findings aren't given effect. It's a separate... That's intended by the ADA, which even the factual findings of if a complaint were filed with the Secretary of Transportation, would not be given any preclusive effect for filing in the federal courts. Part of that's because the intent to make sure that individuals with disabilities have control of their rights and have the forum for judicial review of these civil rights. I understand that even if those issues were allegedly resolved, however, there also runs into the issue with the release of claims under the Gardner-Denver issues, which are, if you look at AA-1447, Gardner-Denver was expressly intended to be included in the analysis of settlement issues and the release of claims, which are that you can't prospectively release claims, and under this court's own jurisprudence, the individual needs to be represented by counsel, there needs to be adequate consideration, and there needs to be a knowing and voluntary release of those claims. Based on the record, it is very unclear that Mr. Gustafson ever knowingly and voluntarily released those claims. No, wait, what 8th Circuit case says that there has to be counsel to release a claim under Missouri law? The case at issue here is Pilon, P-I-L-O-N, and it was cited by defendant in their motion for summary judgment and also referenced by counsel. There is a little bit of a temporal consideration here because I thought as I looked at the document itself that it had expressed language that talked about the circumstances as they existed at the time, and the release itself is sort of time-limited. I think the exact language was, action arising, blah, blah, blah, I just disappeared off my screen because now I can't see it, so I guess I just have to go by memory. What I thought it said was that, which occurred on or prior to the date of this agreement, it talks about facts or events which occurred prior to the date of the agreement. Does that provide you with any way out, even if your guy missed the time to challenge? Yes, Your Honor, and I think that that was, you know, if I hadn't spent all 15 minutes arguing this first issue, that's where I would have been going next, which is the separate independent basis for reversal and remanding is the fact that this analysis under subpart B and the administrative regulations is reachable by acts and omissions in operating the fixed route transit system subsequent to the execution of that settlement agreement. The continued failure to make their system, fixed route system, accessible to Mr. Gustafson is related to subsequent events, subsequent acts of discrimination, and it's important, I think, to note that the most critical being the attempt to segregate Mr. Gustafson onto paratransit system against his wishes, which is an acknowledgment of accommodation. You're out of time, but I've got one quick question. Distinguish Midget for me, if we get to the merits of the post-settlement actions. Sure, Your Honor. With Midget, I think there's two things to note. First, it is from a foreign jurisdiction and not controlling. Second, it was pre-amendments to the 2008 ADA as amended, which redefined individuals with disabilities and sought to restore the ADA to its original interpretation. And then, finally, Midget is involving a completely separate regulation. Now, Midget actually should provide some guidance here because the regulations are given the effect of law or given the fact of acting as controlling standards. That's why there's this isolated, intermittent standard that appears in Midget. It's because it's drawn from the regulations that are identified as being the violations at issue in that case related to operation of wheelchair lifts. Completely different here. Thank you. Thank you. Sorry, Your Honor. Mr. Hay? Thank you, and may it please the court. The lower court's decision should be affirmed because Gustafson failed to establish he was denied meaningful access in two distinct ways. First, the summary judgment record establishes Bicey failed to transport him only four times, the first occurring in 2010 and the last occurring in 2014. As the district court noted, three or four incidents do not establish a violation under Title II. Second, Gustafson's opening brief does not argue he was denied meaningful access. His opening brief contains no other specific examples of when, how, or where he was denied access to a bi-state benefit. In sum, meaningful access is the standard federal courts use to interpret the ADA and its implementing regulations. Gustafson has cited no case law to the contrary, and he has articulated no reason why this court should now abandon that standard. I welcome this court's questions. I will ask you. Go ahead. As to the settlement agreement, why is he precluded from bringing claims, as Judge Erickson noted, that post-date the September 2011 settlement agreement? If the claim existed at the time of the 2011 agreement, for example, if there was a cut and, just to use an analogy, if there was a concrete barrier that said denied him access and we settled the claim of the concrete barrier, the parties know the concrete barrier is going to be there the next day, but we settled it. And that's why that language was included there because the existing conditions at the time should have been released. But I will note for the court that the settlement agreement isn't dispositive to the lower court's decision. The lower court's decision actually only used the settlement agreement to analyze the pass-by incidents, the three pass-by incidents. So, contrary to what the appellant said on page 22 of his brief, I don't believe the district court used the settlement agreement to dismiss all the claims, although this court is free to use the settlement agreement if it wishes to affirm on that grounds, too. Can I just follow up to make sure I understand your position? It seems to me that there are, as I understand it, there are drive-by claims that post-date September 2011. Is it your understanding that the settlement agreement would not preclude those? Here's where I think the lower court was going with that. The lower court concluded that those incidents weren't intentional. So, now we're going into the question of is there some kind of policy in place back in 2011 that's prohibiting these employees or that's the case, then the settlement agreement would control because you can enforce the settlement agreement to enforce those policies. But what about a freestanding claim of a drive-by? Putting aside whether one or two or three is enough to deny meaningful access, those aren't precluded, are they, by the settlement? I don't think, depending on how the drive-by is alleged in a complaint, I don't think so. If it's alleged as intentional discrimination, no, it's not precluded by the settlement. If it's alleged as some type of policy that was covered under the settlement agreement that existed back in 2011, then yes, perhaps. Can I answer any other questions for the judges? Well, I just have one and it goes back to this theory of judicial will stop a little bit and the question really is that was the argument advanced below really the same argument that was first denied and then resurrected? I mean, they first say that they're not going to raise violations of the regulations and that they don't have that as a claim for liability. Then later in their briefing, they assert violations of the regulations and as I read what they wrote in the court below, it looked more like they were asserting that the violations of the regulations was factual evidence that would support a denial of meaningful access as opposed to just sort of resurrecting claims based on the regulations as force of law per se. And why is that not what happened? I mean, did I misread it? I think so. During the November 2019 hearing, we filed a motion for judgment on the pleadings because all these regulations were cited in the expert report, but what was lacking was any evidence that Gustafson was denied access due to these regulation violations. So we put it on Gustafson during the hearing. We said, well, tell us, you know, where's the denial of access? And he told the court and he told us, he says, I'm only using the regulation violations to demonstrate deliberate indifference. Now, we don't agree with that approach, but he certainly is free to do that. And so the court issued an order saying you're not going to use the regulation violations as claims. And then we got to summary judgment and they attempted to use it as claims, which caused some confusion perhaps in the wording of the court's order. But the court's order simply addresses, you know, you waive this issue back in November and then they address the issues on the merits why Gustafson couldn't enforce the literal wording of the regulations without some type of evidence that he was denied access. Okay. Can I answer any other questions? All right. Thank you. Mr. Finkus, you've used up your time. On this distinction between the kind of drive-by allegations that was made in response to Judge Kelly's question, are you alleging that these were incidents of intentional discrimination or are you alleging that they reflect some kind of policy? That's, I think, the distinction counsel was making. Can you clarify what the claims are, the drive-by claims? Yeah, the drive-by claims are almost a second aspect of the claims, which are that those were potentially intentional drive-bys and there's videographic evidence that a jury could use to assess whether or not they believe that on a clear day with no obstructions of view and Mr. Gustafson standing in a bus zone and having complained to the complaint department that he was driven by and the complete failure to conduct an investigation into those claims and even the almost admission of the drivers in question that were identified by Bystate from its own records that you could find, a reasonable jury could find that these were intentional acts of discrimination. That's how they were alleged. Thank you. Thank you. That does clarify it for me at least. Unless Judge Kelly wants to, any more. That helps, thank you. Very good. The cases, the cases, what? Sorry, I was just going to ask if I could briefly respond to the issue that had been raised about the regulations. No. Okay. I think that's in the briefs. And the cases.